# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PAT EMERSON

VS.                                                     No. MC 04-52ML

WEMBLEY USA, INC., ET. AL.

---

**RESPONSE TO WEMBLEY INC.'S AND WEMBLEY USA, INC.'S MOTION TO COMPEL ANSWERS TO DEPOSITION QUESTIONS BY WITNESS DAN BUCCI**

Plaintiff Patricia Emerson, through counsel Zupkus and Angell, P.C., hereby submits her Response to Defendants Wembley, Inc.'s and Wembley USA, Inc.'s Motion to Compel Answers To Deposition Questions By Witness Dan Bucci. In support thereof, Plaintiff states as follows:

**I.  INTRODUCTION**

Plaintiff completed the deposition of non-party witness Dan Bucci on November 16, 2005 in Providence, Rhode Island. Mr. Bucci, who was an officer and director of Wembley at the time Plaintiff worked for the companies, has recently been convicted of conspiracy to commit wire fraud and is preparing to appeal. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 10, lines 18-24, p. 11, lines 1-7, attached to Plaintiff's Response To Second Renewed Motion For Summary Judgment as Exhibit B-34. Accordingly, Mr. Bucci declined to answer the vast majority of the deposition questions posed in the present case. Instead, Mr. Bucci asserted his Fifth Amendment rights under the United States Constitution. *See* Deposition of Dan Bucci, taken November 16, 2005, attached to Plaintiff's Response To Second Renewed Motion For Summary Judgment as Exhibit B-34.

1

Over two and a half months after Mr. Bucci's deposition, Defendants submitted their Second Renewed Motion For Summary And Partial Summary Judgment. In Plaintiff's Response, dated December 22, 2005, Plaintiff requested that the U.S. District Court for the District of Colorado order an adverse inference against Defendants Wembley for each of the unanswered questions in Mr. Bucci's deposition, in order to preserve fairness and justice in this case. *See* Plaintiff's Response To Second Renewed Motion For Summary Judgment, p. 44, attached hereto as **Exhibit A**. Because of Mr. Bucci's silence, Plaintiff was deprived of vital and important discovery in this case.

Subsequently, on February 8, 2006, Defendants Wembley, Inc. and Wembley USA, Inc. submitted their Motion to Compel Answers To Deposition Questions By Witness Dan Bucci to the U.S. District Court for the District of Rhode Island. *See* Defendants' Motion To Compel. In their Motion To Compel, Defendants request that the Court enter an order compelling Mr. Bucci to provide deposition testimony or, in the alternative, that the Court transfer jurisdiction over their Motion to the U.S. District Court for the District of Colorado. *See* Defendants' Motion To Compel, p. 2.

Plaintiff now submits her Response to Defendants' Motion To Compel. Another order compelling Mr. Bucci to provide yet additional deposition testimony would be unreasonable. Plaintiff was already forced to wait almost two years for Mr. Bucci's deposition testimony. During this considerable amount of time, Plaintiff's lawsuit was put on hold. Defendants repeatedly objected to Plaintiff deposing Mr. Bucci. Mr. Bucci's deposition was only obtained after considerable delay, inconvenience, and expense to the Plaintiff. An order requiring Mr. Bucci's deposition would only further delay the Plaintiff's lawsuit, and would be unduly burdensome to the Plaintiff. Defendants' request is a transparent attempt to foil the discovery

2

process and waste judicial resources in this case. Further, Mr. Bucci had reasonable cause to plead the Fifth Amendment privilege during his deposition.

II.  ARGUMENT

    A.  Requiring Yet Another Deposition Of Dan Bucci Would Unfairly Cause Plaintiff Additional Unreasonable Delay And Expense.

Requiring additional deposition testimony from Dan Bucci would be unreasonable in this case. Because of Defendants' repeated refusal to cooperate with Mr. Bucci's deposition in the first place, Plaintiff has already been forced to put her civil case on hold for over eighteen months. As a result of this delay, Plaintiff has expended considerable time, resources, and money in unsuccessful attempts to obtain Mr. Bucci's deposition testimony. Requiring yet additional testimony would only continue to unfairly burden the Plaintiff and delay her civil case. In addition, this testimony would put the Plaintiff in between a rock and a hard place with regards to the trial judge handling Plaintiff's civil case with the U.S. District Court for the District of Colorado.

"[T]he deposition-discovery rules are to be accorded a broad and liberal treatment." *SEC v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000) (quoting *Hickman* ). There are, however, limitations on pre-trial discovery. *See Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192 (1st Cir. 2001). Discovery has "ultimate and necessary boundaries." *See Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Although the federal rules permit liberal discovery, it "is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984). "It is clear from experience that pretrial discovery by depositions ... has a significant potential for abuse." *Id.* Because of liberal discovery and the potential for abuse, the federal rules "confer[ ]broad discretion on the [district]

3

court to decide when a protective order is appropriate and what degree of protection is required." *Id.* at 36.

Rule 26(c) provides for protective orders, issued by the district court, to limit or eliminate discovery sought. Fed.R.Civ.P. 26(c) provides that, upon a showing of good cause, the presiding court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, including one or more of the following: (1) that the disclosure or discovery not be had . . ." In determining whether good cause to limit discovery exists, courts look at whether the discovery would pose an undue burden. *See* Fed.R.Civ.P. 26(b)(2)(F)(iii). The burden or expense of discovery is "undue" when "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues in the litigation, and the importance of the proposed discovery in resolving the issues." *See* Fed.R.Civ.P. 26(b)(2)(F)(iii). Courts also look at whether "the party seeking discovery has had ample opportunity by disclosure or discovery in the action to obtain the information sought." *See* Fed.R.Civ.P. 26(b)(2)(F)(ii).

In this case, a second deposition by Mr. Bucci would impose an undue burden upon the Plaintiff. The proposed discovery would impose a significant financial burden on the Plaintiff, and would further delay her civil case. Plaintiff's case has already been delayed for a considerable amount of time. In addition, an order compelling additional testimony from Mr. Bucci would force the Plaintiff into a position of conflict with the trial judge handling Plaintiff's civil case in the U.S. District Court for the District of Colorado. Mr. Bucci's deposition was the only thing delaying the Plaintiff's civil case. Following Mr. Bucci's deposition on November 17, 2005, the trial judge allowed the Plaintiff's civil case to proceed. The trial judge did not

4

object to Defendants' Motion For Summary Judgment or Plaintiff's Response thereto. Further delay, in the form of a second deposition by Mr. Bucci, would put the Plaintiff in a precarious position with the Colorado trial judge who would like to move Plaintiff's case to a quick resolution and trial.

Defendants have had ample opportunity to cooperate with Mr. Bucci's deposition, as described more fully below:

1. As early as October 30, 2003, Plaintiff notified the Court that she anticipated problems in deposing Mr. Bucci because he was the subject of a Rhode Island Grand Jury investigation.

2. Plaintiff served Mr. Bucci with a deposition subpoena on March 15, 2004. In an effort to facilitate Mr. Bucci's deposition, Plaintiff and Plaintiff's counsel agreed to travel to Massachusetts, and later Rhode Island, in order to conduct the deposition. In addition, the subpoena issued to Bucci was accompanied by a check to compensate him for his time and travel expenses.

3. After receiving Plaintiff's subpoena, Mr. Bucci filed a Motion To Quash Subpoena And For Protective Order on March 26, 2004. *See* Bucci's Motion To Quash Subpoena, attached hereto as **Exhibit B**. In this Motion To Quash, Mr. Bucci objected to the Plaintiff's subpoena on the grounds that (1) the subpoena was unduly burdensome, and (2) Mr. Bucci was a defendant in a criminal

5

proceeding pending in the U.S. District Court for the District of Rhode Island. *See* Motion To Quash Subpoena, p. 1, attached hereto as **Exhibit B**.

4. In order to resolve Mr. Bucci's Motion To Quash Subpoena, Plaintiff moved for an Extension of the Discovery Deadline, in a continued effort to obtain Mr. Bucci's deposition testimony.

5. However, in a pleading filed on April 28, 2004, Defendants Wembley, Inc. and Wembley USA, Inc. objected to Plaintiff's Motion for Extension, arguing that Plaintiff lacked "good cause" for an extension of time to depose Mr. Bucci. *See* Defendants' Objection To Motion For Extension, attached hereto as **Exhibit C**. Defendants further objected to Mr. Bucci's deposition testimony. Despite Defendants' objection, Plaintiff was granted an extension of time in order to obtain Mr. Bucci's testimony.

6. In May of 2004, Plaintiff filed her Motion To Compel Subpoena Issued to Daniel Bucci Or In the Alternative, Motion To Modify Subpoena As Justice So Requires. *See* Plaintiff's Motion To Compel, dated May 2004, attached hereto as **Exhibit D**.

7. Once again, Defendants objected to Plaintiff's request and objected to Mr. Bucci's deposition. Because of Defendants' objection, a hearing on Plaintiff's Motion To Compel took place in the U.S. District Court for the District of Rhode Island on June 30, 2004.

8. Following this hearing, on July 19, 2004, the Court issued an Order holding that Mr. Bucci's deposition would be allowed to proceed as soon as practicable following the verdict in Mr. Bucci's criminal case. *See* Order, p. 2, attached hereto as **Exhibit E.** Because of Defendants' failure to cooperate with Mr. Bucci's deposition, Plaintiff's case was put on hold pending the resolution of Mr. Bucci's criminal case. A year later, the Plaintiff's case was still on hold, because Mr. Bucci's criminal case still had not been resolved.

9. In order to allow her civil action to proceed, Plaintiff submitted a Motion To Amend the Court's order requesting to be allowed to depose Mr. Bucci. *See* Motion To Amend Order, ¶ 9, attached hereto as **Exhibit F.**

10. Once again, Defendants Wembley USA, Inc. objected to the Plaintiff's request. *See* Defendants' Response To Motion To Amend, dated August 3, 2005, attached hereto as **Exhibit G.**

11. Once again, as a result of the Defendants' objection, a hearing was set on Plaintiff's Motion. Plaintiff's counsel traveled to from Denver, Colorado to Providence, Rhode Island for this hearing, which occurred on September 7, 2005 before the U.S. District Court for the District of Rhode Island.

7

12. Following that hearing, this Court entered an Order granting Plaintiff's Motion To Amend and ordering Mr. Traini, Mr. Bucci's attorney, to produce Mr. Bucci for his deposition no later than ninety (90) days from the date of the Order. However, despite the Court's order, Mr. Traini failed or refused to schedule Mr. Bucci's deposition.

13. Plaintiff was ultimately forced to file a second Motion to Compel Mr. Bucci's deposition testimony. As of October 25, 2005, when Plaintiff submitted her Motion To Compel Mr. Bucci's deposition, she had been trying to obtain Mr. Bucci's deposition testimony for over 18 months. *See* Plaintiff's Motion To Compel, dated October 25, 2005, attached hereto as **Exhibit H**.

14. During this period, Defendants repeatedly objected to Mr. Bucci's deposition. Because of Defendants' unrelenting refusal to cooperate with Mr. Bucci's deposition, Plaintiff's counsel was repeatedly forced to travel over 1,700 miles from Denver, Colorado to Providence, Rhode Island.

During this entire period, Plaintiff's civil case has been put on hold. As a result, Plaintiff's damages have grown. Mr. Bucci is a former employee of Defendants. If anyone had advance control over Mr. Bucci's deposition testimony, it was the Defendants. Further, Mr. Bucci's testimony would have incriminated the Defendants in the Plaintiff's civil case. Clearly, Defendants' request to depose Mr. Bucci now, after objecting to Mr. Bucci's deposition for over 18 months, is a transparent attempt to annoy the Plaintiff and to obstruct and delay her civil case.

8

Any further delay would only unfairly and unreasonably cause additional expense and delay to the Plaintiff. Further delay would also force Plaintiff into a position of conflict with the trial judge for the District of Colorado.

Defendants' request to compel Mr. Bucci's deposition testimony and transfer jurisdiction to the District of Colorado is a blatant example of forum shopping. Defendants waited approximately two and a half months after the completion of Mr. Bucci's deposition before Defendants filed their Motion To Compel. During that time, Defendants filed a Motion For Summary And Motion For Partial Summary Judgment with the District of Colorado. An order on Defendants' Motion For Summary Judgment is pending. At the time Defendants filed their Motion For Summary Judgment, Defendants did not indicate to the District of Colorado trial judge that there was a problem with Mr. Bucci's testimony. By failing to notify the District of Colorado trial judge of any problem, waiting at least two and a half months to object to Mr. Bucci's deposition testimony, and only objecting once an order on their Motion For Summary Judgment was pending, Defendants are transparently shopping for the most favorable forum.

Because a second deposition of Mr. Bucci would impose an undue burden upon the Plaintiff, and because Defendants have already had numerous opportunities to cooperate with obtaining Mr. Bucci's deposition testimony and yet have repeatedly failed to do so, Plaintiff has shown "good cause" to limit discovery pursuant to Fed.R.Civ.P. 26(c). In the interest of fairness and justice, Defendants' Motion To Compel Answers To Deposition Questions By Witness Dan Bucci should be DENIED.

   **B.** **Mr. Bucci Had Reasonable Cause To Plead The Fifth Amendment During His Deposition.**

9

Defendants request that Mr. Bucci be ordered to provide additional deposition testimony because Mr. Bucci has no "reasonable cause to apprehend danger" upon giving responsive answers to Plaintiff's attorney's questions that "would support a conviction" or "would furnish a link in the chain of evidence needed to prosecute" him for a crime. *See* Defendants' Motion To Compel, p. 2. To this end, Defendants cite federal case law from the 10th Circuit. However, the law of the First Circuit or of the U.S. District Court for the District of Massachusetts governs in this case. An analysis of the appropriate case law reveals that Mr. Bucci appropriately pled the Fifth Amendment during his deposition on November 16, 2005. Mr. Bucci had counsel present during the deposition who advised him with regards to when the Fifth Amendment privilege was appropriate; and Mr. Bucci didn't plead the Fifth Amendment to every question. Further, Mr. Bucci is still entitled to plead the Fifth Amendment, because Mr. Bucci is appealing his criminal conviction.

The First Circuit has stated that "[i]t is well-accepted that a witness's direct testimony can be stricken if she invokes the fifth amendment on cross-examination to shield that testimony from scrutiny." *See United States v. Parcels of Land*, 903 F.2d 36, 43 (1st Cir.1990). See also *U.S. v. Mandujano*, 425 U.S. 564 (1976) (the U.S. Supreme Court recognizes that a witness, though possibly engaged in some criminal enterprise, can be required to answer before a grand jury "so long as there is no compulsion to answer questions that are self-incriminating."). The privilege against self-incrimination extends not only to answers that would in themselves support a conviction but "likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *See Hoffman v. U.S.*, 341 U.S. 479 (1951). "[I]f the privilege is asserted, the court must look at each question to which a claim of privilege is directed and determine whether the answer to that particular question would subject the

10

witness to a real danger of further incrimination." *See Femia v. McLaughlin*, 126 F.R.D. 426 (D.Mass. 1989). If it "clearly" appears to the court that the witness is "mistaken" or is advancing his or her claim as a subterfuge, the court should compel the witness to answer. *See Hoffman*, 341 U.S. at 479. The privilege against self-incrimination must, however, "be accorded liberal construction in favor of the right it was intended to secure." *Id.*

A nonparty witness in civil action is entitled to invoke the Fifth Amendment privilege against self-incrimination in the course of his deposition when a responsive answer or explanation of why the question could not be answered might support a criminal conviction or provide evidence needed to prosecute the witness for a crime. *See McIntyre's Mini Computer Sales Group, Inc. v. Creative Synergy Corp.*, 115 F.R.D. 528 (D.Mass. 1987). The witness will be required to give reasons, albeit in general and circumstantial terms, for invoking the privilege with respect to each objectionable question. *See id.*

Mr. Bucci did not plead the Fifth Amendment in response to all questions posed by the Plaintiff. Rather, Mr. Bucci only plead the Fifth Amendment in response to certain questions. Mr. Bucci had counsel present who advised him with regards to when the Fifth Amendment privilege applied. Mr. Bucci reasonably pled the Fifth Amendment privilege because his testimony "embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." As discussed by Mr. Bucci, in his Objection To Motion To Compel Answers To Deposition Questions, filed February 27, 2006, the government's case against Mr. Bucci is grounded entirely in actions allegedly taken by Mr. Bucci from his position at Lincoln Park, and that position is a link in the chain of evidence needed to prosecute him. *See* Mr. Bucci's Objection, p. 3. Mr. Bucci wrote and cashed checks in the money room in Lincoln Park. *See* Deposition of Dan Bucci, taken November 16, 2005, p.

47, lines 9-20, attached to Plaintiff's Response To Second Renewed Motion For Summary Judgment as Exhibit B-34. Plaintiff was the Chief Financial Officer for Defendants Wembley. *See* Deposition transcript of Janet Meis, taken April 3, 2004, p. 10, lines 15-21, attached to Plaintiff's Response To Second Renewed Motion For Summary Judgment as Exhibit B-4; Deposition transcript of Pat Emerson, taken April 28, 2004, p. 26, lines 10-12, attached to Plaintiff's Response To Second Renewed Motion For Summary Judgment as Exhibit B-1; documents relating to Pat Emerson as Acting CFO, attached to Plaintiff's Response To Second Renewed Motion For Summary Judgment as Exhibit B-5.

In July of 2001, Plaintiff authored several e-mails questioning several accounting practices such as check cashing through the money room, internal control, and other accounting practices at issue in Mr. Bucci's criminal case. *See* documents relating to questionable accounting practices, attached to Plaintiff's Response To Second Renewed Motion For Summary Judgment as Exhibit B-13. Plaintiff had knowledge of Mr. Bucci's illegal acts and attempted to stop them. *See* correspondence between Dan Bucci and Pat Emerson, attached to Plaintiff's Response To Second Renewed Motion For Summary Judgment as Exhibit B-28; documents relating to questionable accounting practices, attached to Plaintiff's Response To Second Renewed Motion For Summary Judgment as Exhibit B-13. As a result, the Plaintiff was discriminated against, her financial authority was reduced, and she was subjected to a hostile working environment. *See* Response To Second Renewed Motion For Summary Judgment, p. 10-11. The Plaintiff was called to testify in grand jury investigations that related to the criminal charges ultimately brought against Mr. Bucci and Nigel Potter. Accordingly, Mr. Bucci's responses to questions about the conditions of Plaintiff's employment and termination could reasonably be "links in a chain of evidence" that could be incriminating for Mr. Bucci.

Because an appeal of Mr. Bucci's conviction is pending, the Fifth Amendment privilege still applies to Mr. Bucci's deposition testimony. Mr. Bucci was recently convicted of conspiracy to commit wire fraud arising out of checks cashed during his employment with Defendants Wembley. *See* documents relating to Bucci's conviction, attached to Plaintiff's Response To Second Renewed Motion For Summary Judgment as Exhibit B-29. Mr. Bucci is appealing his conviction. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 8, line 2, attached hereto as Exhibit B-34. Mr. Bucci capably responds to Defendants' double jeopardy argument in Mr. Bucci's Objection To Motion To Compel, p. 4-6, which is incorporated by reference herein.

It is not for the Defendants to decide whether or not Mr. Bucci's silence was justified. Because Mr. Bucci (1) had counsel present, and (2) only pled the Fifth Amendment in response to specific questions, Mr. Bucci appropriately pled the Fifth Amendment during his November 16, 2005 deposition. Further, because Mr. Bucci is appealing his criminal conviction, the Fifth Amendment will still apply in any future depositions of Mr. Bucci. Accordingly, Mr. Bucci is entitled to a presumption of good faith in his invocation of the Fifth Amendment during his deposition testimony, and Defendants' Motion To Compel Answers To Deposition Questions By Witness Dan Bucci should be DENIED.

### III.   CONCLUSION

A second deposition of Mr. Bucci would be unreasonable, because the Plaintiff was already forced to wait over 18 months for Mr. Bucci's deposition testimony. During this considerable amount of time, Plaintiff's lawsuit was put on hold. Also during this time, Defendants repeatedly objected to Plaintiff deposing Mr. Bucci. Mr. Bucci's deposition was

only obtained after considerable delay, inconvenience, and expense to the Plaintiff. An order requiring Mr. Bucci's deposition would only further delay the Plaintiff's lawsuit, force the Plaintiff into a position of conflict with the District of Colorado trial judge, and be unduly burdensome to the Plaintiff. Defendants' request is a transparent attempt at forum shopping for a favorable verdict with regards to Defendants' pending Motion For Summary Judgment in the District of Colorado. Further, Mr. Bucci had reasonable cause to plead the Fifth Amendment privilege during his deposition. Because Mr. Bucci is appealing his conviction, he still has reasonable cause to plead the Fifth Amendment during future depositions. It is not for the Defendants to decide whether Mr. Bucci's silence is justified. Mr. Bucci had counsel present during his deposition, and did not plead the Fifth Amendment to every question. Because Mr. Bucci's answers to Plaintiff's deposition questions could reasonably be "links in a chain of evidence" that could incriminate for Mr. Bucci, Mr. Bucci is entitled to a presumption of good faith with regards to his invocation of the Fifth Amendment. Defendants' Motion To Compel Answers To Deposition Questions By Witness Dan Bucci should be DENIED.

WHEREFORE, and based on the foregoing, Plaintiff respectfully requests this Court to deny Defendants Wembley USA, Inc.'s and Wembley Inc.'s Motion To Compel Answers To Deposition Questions By Witness Dan Bucci. The Plaintiff further requests any additional relief this Court may deem just and proper.

Respectfully submitted this 27th day of February, 2006.

ZUPKUS & ANGELL, P.C.

_/s/ Allison Clark_

Robert Zupkus
Bradley N. Shefrin
Melissa A. Clack
Zupkus & Angell, P.C.
555 E. 8th Avenue
Denver, Colorado 80202
Telephone: (303) 894-8948
Fax: (303) 894-0104
Email: rzupkus@zalaw.com
Email: bshefrin@zalaw.com
Email: mclack@zalaw.com
Attorneys for Plaintiff Patricia Emerson

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of February 2006, I filed the foregoing Defendants Wembley USA, Inc.'s and Wembley Inc.'s Motion To Compel Answers To Deposition Questions By Witness Dan Bucci, with the Clerk of Court using via Federal Express and will send such filing to the following via U.S. Mail:

kmix@swlaw.com
Kristen L. Mix, Esq.
Snell & Wilmer
1200 Seventeenth Street, Suite 1900
The Tabor Center
Denver, CO 80202

_____
FOR ZUPKUS & ANGELL, P.C.