IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PATRICIA A. EMERSON | : | |
| Plaintiff | : | |
| | : | |
| VS. | : | No. 04 MC 10089(NG) |
| | : | |
| WEMBLEY USA, INC., ET AL. | : | |
| Defendants | : | |

**DANIEL BUCCI'S RESPONSE TO WEMBLEY DEFENDANTS'
MISCELLANEOUS PETITION TO TAKE DEPOSITION OF A
PERSON CONFINED IN PRISON AND TO COMPEL ANSWERS
TO DEPOSITION QUESTIONS**

The Defendants in the within action have filed a Miscellaneous Petition with this Court seeking to take the deposition of a person confined in prison and to compel a third-party witness, Daniel Bucci, to respond to questions asked during his earlier deposition to which he invoked his Fifth Amendment privilege. The Plaintiff in this action has objected to this request, and the witness, Mr. Bucci, objects as well.

The Procedural history and factual background of this matter is set forth in Plaintiff's Response to this Miscellaneous Petition and will not be repeated here.

Pursuant to an order of the United States District Court for the District of Rhode Island, Mr. Bucci's deposition was taken on November 16, 2005, and as had been consistently represented to counsel for Plaintiff and

Defendant, Mr. Bucci invoked his Fifth Amendment privilege to most of the questions asked of him. During earlier proceedings in this matter in the District of Rhode Island, like Mr. Bucci, the Defendants, who now seek to take the deposition and compel answers, objected to and sought to prevent Mr. Bucci's deposition. Now that the Plaintiff has requested that an adverse inference be drawn against the Defendants from Mr. Bucci's invocation of the privilege, the Defendants seek to compel his answers.

Mr. Bucci objects to the Petition for several reasons, some of which are also asserted by Plaintiff in her Response. To the extent that Plaintiff's Response is more inclusive or broader in scope than Mr. Bucci's response, Mr. Bucci adopts and joins in Plaintiff's response.

1. **The Privilege.**

As the Court is aware from the pleadings, Mr. Bucci interposed his Fifth Amendment privilege to certain deposition questions. Nothing has changed between the time he did that and now in terms of the applicability of the privilege. He had been convicted in the United States District Court for the District of Rhode Island of certain

violations of federal law, and had filed his notice of appeal. That status continues to prevail today.[1]

Without engaging in the extraneous exercise of analyzing the appellate issues, counsel, as an officer of the court, represents that Mr. Bucci's appeal is not frivolous, and raises numerous substantive issues.[2] The Defendants have suggested that Mr. Bucci "has no reasonable cause to apprehend danger" and that his invocation of the privilege falls within the scope of cases like **United States v. Schmidt, 816 F.2d 1477, 1481 (10th Cir. 1987)**(which is not only not the law in the Fist Circuit, but is clearly distinguishable on its facts).

Defendants' argument demonstrates their lack of familiarity with the criminal justice system. First of all, Mr. Bucci's risk is clearly not speculative. He has already been indicted, tried twice and convicted once by the government for matters arising entirely from his position as General Manager of Lincoln Park. One matter that is unmistakably clear from the evidence adduced at

---

[1] On May 26, 2006, all Defendants in the criminal appeal filed their reply briefs with the First Circuit and the Court has advised that the case will be on the July/August argument calendar.

[2] To the extent the Court harbors any reservation about this representation, counsel will make available copies of all the criminal appellate briefs.

both criminal trials, and from the government's consistent representations of its theory of prosecution, is that the basis of the government's case against both Mr. Bucci, and the corporate defendant, was grounded entirely in actions allegedly taken by Mr. Bucci from his position at Lincoln Park, and that position itself is a link in the chain of evidence needed to prosecute him in the criminal case as the government has charged it, and has twice tried it. Additionally, Mr. Bucci would be unable, without waiving his privilege, to identify any document that had any relevance to the civil case.

Second, Defendants' claim that "Mr. Bucci cannot be criminally prosecuted for disclosing whether Plaintiff was part of upper management at Wembley" for example, is specious.  The test is not whether the witness can be prosecuted for an answer to a specific question, but whether anything about the answer, including evidence relating to the status or position from which the answer is given, can be used against him in a criminal prosecution.

Third, the Defendants' double jeopardy argument is inconsistent with the criminal law.  Mr. Bucci did not plead <u>nolo contendere</u> to anything and the mere fact that he was prosecuted does not implicate double jeopardy considerations [infusing with helium any precedential

weight that might have ever attached to the unpublished decision in **In re Arizona Bakery Products Litigation, 1975 U.S.Dist.LEXIS 15707, *4-5 (D.Ariz.1975)**].[3]  Defendants' citation to yet another unpublished case, **Wilson P. Abraham Const. Co. v. Armco Steel Corp., 1979 U.S.Dist.LEXIS 8373, *5-6 (E.D.La.1979)** is likewise frivolous.  There, three of the witnesses had pled nolo contendere and the fourth had been granted immunity.  Additionally, as in the Arizona case, the statute of limitations on any continuing conspiracy had expired.  See footnote 3, above.  Even a cursory reading of the newspaper would apprise the Defendants that Mr. Bucci was actually tried twice for the criminal offenses.  Depending upon which ground of his appeal succeeds,[4] the case may have to be tried a third

---

[3] Moreover, in the Arizona case, the statute of limitations on the criminal conspiracy had expired.

[4] Two of the most significant issues on appeal are (1) the propriety of certain jury instructions emanating from the Sawyer/Woodward/Sawyer trilogy of First Circuit cases, and (2) whether the defendants were entitled to a mistrial/new trial based on a prosecutorial comment in rebuttal alluding to the existence of other incriminating evidence not introduced at trial.

5

time, and on one such ground at least,[5] double jeopardy will not preclude a retrial.[6]

As this Court is aware, the law in the First Circuit on this issue has been, for many years, and continues to be **In re Brogna, 589 F.2d 24, 27-29 (1st Cir. 1978)**. The evidence already established here by the indictment and the two trials of Mr. Bucci's criminal case satisfies with ease all the requirements of **Brogna** and presents an even more compelling case for upholding the assertion of the privilege than was presented there. In any event, given the liberal construction required of such privilege claims, there should be no question of its proper application here. **See, Hoffman v. United States, 341 U.S. 479, 486 (1951); Ullman v. United States, 350 U.S. 422, 426 (1956).**

As far as Mr. Bucci's demonstration of entitlement to the privilege is concerned, aside from the fact that it is apparent on the face of the criminal case, as the Supreme Court pointed out in **Hoffman, 341 U.S. at 486-487**:

---

[5] In Mr. Bucci's appeal, the prosecutorial misconduct/mistrial issue could be decided so as to preclude a retrial on double jeopardy grounds.

[6] Even where a defendant in a criminal case has pled guilty and been sentenced, the privilege continues to apply as a federal conviction does not insulate one from state criminal liability. **See, United States v. Albert, 773 F.2d 386, 389 (1st Cir. 1985).**

6

> . . . if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.

**See also, The Pillsbury Company v. Conboy, 459 U.S. 248, 256-259 and fn. 13 (1983).**

**2. Balance of Equities.**

**a. The Defendants Should Be Judicially Estopped From Asserting Their Position.**

In this case, the Defendants originally sought to preclude Mr. Bucci's deposition, and joined in all of his arguments toward that end. Only when he was forced to be deposed and was required to invoke his Fifth Amendment privilege in the context of what is clearly not a speculative prosecution, and the Plaintiff sought to take advantage of this dilemma by requesting the drawing of an adverse inference, do the Defendants now want him to answer the questions. This is clearly unfair.

In the first place, the Defendants never sought to have Mr. Bucci answer any questions or to provide any information or produce any documents prior to the

7

deposition (i.e., his invocation of the privilege).  Their litigation strategy was to keep him from testifying at all, and sought to rely on him to stonewall the Plaintiff, knowing that he had a valid Fifth Amendment privilege.  Allowing them to now turn the shield into a sword is a violation of Mr. Bucci's constitutional rights.

Defendants should be estopped from asserting the position they now take.  They argued vigorously to the District Court in Rhode Island that Mr. Bucci had a valid Fifth Amendment privilege that the court should not abrogate.[7]  They independently moved to quash the subpoena served upon Mr. Bucci and did everything procedurally and substantively possible to prevent his deposition from being taken, when it suited them to do so.  They gambled that Judge Nottingham in Colorado would not allow an inference to be drawn against them, and now, fearing that gamble to be lost, they have reversed course.  This conduct fits squarely within the parameters of the doctrine of judicial

---

[7] There is no fundamental difference in Mr. Bucci's exposure since that time.  As the Court knows, his conviction is not final until affirmed by the Court of Appeals, and without waiving any rights to continue to resist the deposition on privilege grounds even after an affirmance in the event a petition for rehearing or certiorari is filed, it is clear that as long as Mr. Bucci can face a retrial of the indictment he is in no different position than he was before his trials, at least as far as his testimonial privilege is concerned.

estoppel and should preclude any relief sought by the Defendants.[8]  **See, e.g., United States v. Levasseur**, 846 F.2d 786, 792 (1st Cir.), **cert.denied**, 488 U.S. 894 (1988):

> In this circuit, then, when a litigant is "playing fast and loose with the courts," that party will be precluded from asserting a position inconsistent with a position he or she took in an earlier proceeding. *Patriot Cinemas*, 834 F.2d at 212. *Accord United States v. Kattar,* 840 F.2d 118, 129-30 n. 7 (1st Cir.1988).

**See also, In Re Mitchell**, 255 B.R. 97, 108-109 (D.Mass. 2000); **Wang Laboratories, Inc. v. Applied Computer Sciences, Inc.**, 741 F.Supp. 992, 996-997 (D.Mass. 1990). See also the recent discussion of judicial estoppel in **Otis v. Arbella Mutual Insurance Company**, 443 Mass. 634, 640-643, 824 N.E.2d 23, 28-31 (2005).

    b.    **The Defendants' Petition Is Premature**.

Secondly, Defendants (and Plaintiff as well, for that matter), have not made a sufficient showing that Plaintiff is entitled to have the inference drawn, and may not be able to for several reasons.  First, the drawing of the inference is not mandatory at all.  It is merely

---

[8] The doctrine has long been recognized in both the First Circuit and in this district.  **See, United States v. Owens, 933 F.Supp. 76, 81 (D.Mass. 1996).**

9

permissible and may just as easily not be drawn.[9] As Judge Selya pointed out in **In Re Carp, 340 F.3d 15, 23 (1st Cir. 2003):**

> . . . in a civil proceeding, the drawing of a negative inference is a permissible, but not an ineluctable, concomitant of a party's invocation of the Fifth Amendment. *See Mulero-Rodríguez v. Ponte, Inc.*, 98 F.3d 670, 678 (1st Cir.1996). While the law does not forbid adverse inferences against civil litigants who refuse to testify on Fifth Amendment grounds, *see Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), it does not mandate such inferences. When all is said and done, the trial court has discretion over whether a negative inference is an appropriate response to the invocation of the Fifth Amendment in a particular civil case.

Secondly, the law is clear that before the inference can be drawn from invocation of the privilege, there must be some independent evidence to support the conclusion for which the inference is sought. **See, Doe ex rel. Rudy-Glanzer v. Glanzer, 232 F.3d 1258, 1264 (9th Cir. 2000); United States v. Stelmokas, 100 F.3d 302, 311 (3d Cir. 1996), cert. denied, 520 U.S. 1242 (1997). See also, Butler v. Oak Creek-Franklin School District, 172 F.Supp.2d 1102, 1127 (E.D.Wis. 2001).**

---

[9] As the Court is no doubt aware, the seminal case in the area of drawing inferences from invocation of the privilege originated in this Circuit. **Baxter v. Palmigiano, 425 U.S. 308, 318 (1976).**

10

And thirdly, there is a serious legal question as to whether or not an adverse inference may be drawn against <u>a party</u> from the invocation of the privilege by someone who is <u>not a party</u> to the litigation. This area of the law is unsettled at best. **See**, **LiButti v. United States, 107 F.3d 110, 120-124 (2d Cir. 1997):**

> The district court's equivocation [as to whether to allow an adverse inference to be drawn against a party based on the assertion of the privilege by a non-party witness] is understandable in light of the undeveloped posture of the law pertaining to **adverse inferences** when **non-party witnesses** invoke the **Fifth Amendment** in civil litigation. See generally Charles H. Rabon, Jr., Note, <u>Evening The Odds In Civil Litigation: A Proposed Methodology For Using</u> **<u>Adverse Inferences</u>** <u>When</u> **<u>Non-Party Witnesses</u>** <u>Invoke The</u> **<u>Fifth Amendment</u>**, 42 Vand.L.Rev. 507 (1989); Dennis J. Bartlett, Note, **<u>Adverse Inferences Based</u>** <u>On</u> **<u>Non-Party Invocations:</u>** <u>The Real Magic Trick In</u> **<u>Fifth Amendment</u>** <u>Civil Cases</u>, 60 Notre Dame L.Rev. 370 (1985); Robert Heidt, <u>The Conjurer's Circle--The</u> **<u>Fifth Amendment Privilege</u>** <u>In Civil</u> <u>Cases</u>, 91 Yale L.J. 1062 (1982).

In this case, that question alone is particularly complicated because while the Plaintiff obviously claims that Mr. Bucci was an agent of the Defendants at the time material to her cause of action, the Defendants no doubt contest this allegation, and again want to have it both ways. The problem here is that it is the Defendants who seek to abrogate the privilege. For example, the "most significant circumstance" in determining whether the

11

inference should be drawn when the privilege is asserted by a non-party to the civil litigation is the "nature of the relevant relationships" including "the degree of control of the party over the non-party". **In Re Worldcom, Inc. Securities Litigation,** 2005 WL 375315 (S.D.N.Y. 02/17/05), discussing **LiButti**.

    Here, the questions that need to be resolved concerning whether the inference can even be drawn based on Mr. Bucci's status as a non-party are complex and the whole issue is certainly not unambiguous. More clear, however, is that the Defendants who, as noted above, now seek to use Mr. Bucci as a weapon rather than a defense, may deserve to have the inference drawn against them.

    It is the Defendants who have failed to make out a case that they have anything to fear from Mr. Bucci's invocation of the privilege.[10] This court, however, knowing that Mr. Bucci is presently serving 41 months in prison, is well aware that his risk of prosecution is not speculative or imaginary at all.

    **c.    Other Considerations.**

---

[10]As an additional matter, the issue of compulsion of the testimony to defeat Plaintiff's use of the inference may not even be ripe for determination unless and until there has been a ruling by the District Court in Colorado that the inference can be drawn. Plaintiff herself makes this point in her Response.

12

Finally, there is Mr. Bucci's physical condition. Following his initial incarceration at the Federal Medical Center at Devens, he was transferred to the Satellite Camp facility there (in accordance with the District Court's sentencing recommendation). Shortly after that transfer, Mr. Bucci suffered a massive heart attack and had to be removed to two civilian hospitals, at the second of which he underwent quadruple by-bass surgery. He was returned to the medical side of the institution, and has been back to the outside hospital where his heart surgery was performed for at least two follow-up visits. He has still not been medically cleared to return to the Satellite Camp facility at Devens. He is presently still recovering from what was serious surgery, and is doing so in the confines of a prison facility, not at home with access to his family and his own medical personnel. The stress of his heart attack, the surgery, the recovery, and his appeal (which, if successful, may carry with it the prospect of a third trial) are, frankly, enough for him to handle. It would be unfair to impose upon him the additional burden of having to deal with the issues associated with this litigation, to which he is not even a party, particularly since there are

13

other sources from which the information sought is available.[11]

WHEREFORE, Mr. Bucci respectfully requests that the Defendants' Petition be denied and dismissed.

Respectfully submitted,
Daniel Bucci,
By His Attorney,

*/s/ Anthony M. Traini*
_____
Anthony M. Traini (BBO #501560)
56 Pine Street-Suite 2
Providence, RI 02903
Tel. (401) 621-4700
Fax  (401) 621-5888

---

[11] For example, much of what the Plaintiff outlined in her Opposition to Defendants' Motion For Summary Judgment as unavailable due to Mr. Bucci's privilege claim is readily available from the transcripts of the two trials and some of the documents admitted there.

14

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2006, I served the foregoing Response of Daniel Bucci To Defendants' petition For Leave To Take deposition Of A Person Confined In Prison And To Compel Answers To Deposition Questions via the Massachusetts ECF system (to participating counsel), as well as by mail and facsimile:

| | |
|---|---|
| Melissa A. Clack, Attorney at Law<br>Robert A. Zupkus, Esquire<br>Zupkus & Angell<br>555 Eighth Avenue<br>Denver, CO 80203 | Brian P. Voke, Esquire<br>Campbell Campbell Edwards & Conroy<br>123 Dyer Street<br>Providence, RI 02903 |
| Kristen L. Mix, Attorney at Law<br>Snell & Wilmer, L.L.P.<br>1200 Seventeenth Street, Suite 1900<br>Denver, CO 80202 | W. Mark Russo, Esquire<br>Christopher M. Mulhearn, Esquire<br>Ferrucci Russo, P.C.<br>55 Pine Street, 4th Floor<br>Providence, RI 02903 |

/s/ Anthony M. Traini
_____
Anthony M. Traini